UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CAROL MURPHY, | ) |
|     Plaintiff | ) ) ) |
| v. | ) )   1:12-cv-00101-JAW |
| CORIZON, et al., | ) ) ) |
|     Defendants. | ) |

**ORDER DENYING MOTION FOR FURTHER RECONSIDERATION**

The Court denies Carol Murphy's motion to reconsider the Order denying her previously-filed motion for reconsider.

**I.     STATEMENT OF FACTS**

    **A.     Procedural History**

On March 23, 2012, Carol Murphy, a prisoner at the Maine Correctional Center, filed suit in the United States District Court for the District of Tennessee, alleging that a number of people either at or associated with the prison had violated her civil rights. *Compl.* (ECF No. 2). She alleged that one of the Defendants, Scott Burnheimer, was Superintendent of the Prison. *Id.* at 3 (listing "Scott Burnheimer (Superintendent of Prison)" as an additional defendant); *id.* at 6 ("As soon as I was able to hold a pen, I filed complaints with [ ] Scott Burnheimer (Superintendent of the prison)"). The Tennessee District Court quickly transferred the case to the District of Maine, where it was filed on March 23, 2012. *See Live Database* (ECF No. 4).

No stranger to the United States District Court for the District of Maine, Ms. Murphy has filed seven lawsuits in the District of Maine and two in the United States Court of Claims within just over two years. *See In re Murphy*, 598 F. Supp. 2d 121, 121-22 (D. Me 2009). The Court characterized her multiple lawsuits as "frivolous, prolix, and contentious nonsense." *Id.* at 122. Her earlier series of meritless lawsuits resulted in the Court imposing a filing restriction against her, and because her particular obsession seemed to be her animals, the filing restriction was limited to any further lawsuits involving animals. *Id.* at 124-25.

On May 9, 2012, Scott Burnheimer, the Maine Department of Corrections (MDOC), and Joseph Ponte moved to dismiss the Complaint for failure to state a claim. *Mot. to Dismiss for Failure to State a Claim of Defs. Joseph Ponte, Scott Burnheimer and Me. Dep't of Corrections* (ECF No. 15). Ms. Murphy responded on May 29, 2012. *Resp. to MDOC, Ponte & Burnheimer Mot. to Dismiss for 12(b)(6) & Claimed Immunity* (ECF No. 19). Messrs. Burnheimer and Ponte and the MDOC replied on June 8, 2012. *Reply to Resp. to Mot. to Dismiss* (ECF No. 21). On July 6, 2012, the Magistrate Judge issued a sixteen-page Recommended Decision, and recommended that the Court grant the motion to dismiss with prejudice against Messrs. Ponte and Burnheimer in both their personal and official capacities and against the MDOC insofar as Ms. Murphy is seeking monetary damages. *Recommended Decision* at 16 (ECF No. 27) (*Recommended Decision*). On July 23, 2012, Ms. Murphy objected to the Recommended Decision. *Resp. to Kravchuk's Recommendation to Dismiss Ponte, Burnheimer and Me. Dep't Corr.* (ECF No. 30).

On August 22, 2012, the Court adopted the Recommended Decision over Ms. Murphy's objection and dismissed with prejudice Defendants Joseph Ponte, Scott Burnheimer, and the Maine Department of Corrections. *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 39).

On August 29, 2012, Ms. Murphy moved for reconsideration of the Order dismissing Defendants Ponte, Burnheimer, and the Maine Department of Corrections. *Error by Ct./Recons.* (ECF No. 42) (*Mot. for Recons.*). On September 25, 2012, the Court denied her motion for reconsideration. *Order Denying Error by Ct./Mot. for Recons.* (ECF No. 47). On October 3, 2012, Ms. Murphy filed another motion entitled "Error by the Court on Reconsideration." (ECF No. 49) (*Second Mot. for Recons.*).

### B.  The Recommended Decision

In her Recommended Decision, the Magistrate Judge carefully reviewed the allegations in the Complaint. *Recommended Decision* at 2-5. She then discussed the official capacity claims against Mr. Burnheimer, the Superintendent of the Maine Correctional Center, and observed that since a suit against a state official in his or her official capacity is a suit against the official's office, Ms. Murphy's claim for money damages against Mr. Burnheimer in his official capacity was subject to dismissal on sovereign immunity grounds. *Id.* at 6-7.

Regarding Ms. Murphy's individual claims against Mr. Burnheimer, the Magistrate Judge concluded that there was no allegation in the Complaint that linked Mr. Burnheimer to the imposition of fines and that the allegations did not

state a Constitutional claim. *Id.* at 8-9. Similarly, her charges relating to her mandatory participation in fire drills did not rise to the level of a Constitutional violation. *Id.* at 9. The Magistrate Judge thoroughly analyzed the medical care claims against Mr. Burnheimer and concluded that he could not be held responsible under the doctrine of respondeat superior for any of the alleged Constitutional violations committed by CMS/Corizon. *Id.* at 11-12. In addition, regarding the provision of medical care, the Magistrate Judge concluded that Ms. Murphy had not alleged a sufficient link between Mr. Burnheimer's role as Superintendent and the alleged wrongful conduct of his subordinates. *Id.* at 11-16. Similarly, Ms. Murphy's discontent with the grievance process did not rise to the level of a Constitutional violation. *Id.* at 13-14.

C. **The Motion for Reconsideration**

After the Court affirmed the Magistrate Judge's Recommended Decision, Ms. Murphy filed a motion for reconsideration, now asserting that Mr. Burnheimer "is not and never was a state/public officer." *Mot. for Recons.* at 1. She accused the Court as having gone to "great lengths to protect him in an 'official' and 'individual' capacity." *Id.* She said that Mr. Burnheimer "does not have an Oath of Office" and his employment is "not based on Legislative authority" and she maintained that his duties are "not defined directly by law" and his job "may be changed at any time by the person above him." *Id.* She concluded that "[t]his makes [Mr.] Burnheimer a mere employee." *Id.* She insisted that even if Mr. Burnheimer was a state official, the federal court in Maine is "the correct court to hear a complaint of U.S.

Constitutional violation of rights." *Id.* at 2. Citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974), Ms. Murphy demanded that the Court reverse its ruling, saying that "Woodcock Jr. has lost subject matter jurisdiction on this case unless he reverses the dismissal of these 3 defendants based on the rulings presented herein and in previous Plaintiff filings." *Id.* at 3-4.

### D. The Second Motion for Reconsideration

In response to the Court's denial of her motion for reconsideration, Ms. Murphy filed another motion for reconsideration, saying that "Judge John Woodcock, Jr. has failed to understand the information submitted by Plaintiff when he says she provided the Court with no New information and therefore may not have filed her Error/Reconsideration." *Second Mot. for Recons.* at 1. She says that "Plaintiff's Error/Reconsideration informed the Court of the NEW INFORMATION that Maine Secretary of State's Office verified that Scott Burnheimer is NOT a State of Maine State Official." She ends with the question, "On what basis has the court removed Burnheimer from this case now that they know a Maine Assistant Attorney General representing Burnheimer lied to the Court and Burnheimer is NOT a State Official?" *Id.* at 2.

## II. DISCUSSION

### A. The Motion to Reconsider the Order Denying the Motion to Reconsider

The District of Maine Local Rules allow for the filing of a motion for reconsideration. *See* D. ME. LOC. R. 7(g). The standard for reconsideration is whether the order "was based on a manifest error of fact or law." D. ME. LOC. R.

5

7(g). A party may present newly discovered evidence in a motion for reconsideration; however, the standard for newly discovered evidence is that the evidence be not only new to the litigant but not previously available. *See Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). "A motion for reconsideration 'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" *Fabrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 31 (1st Cir. 2012) (quoting *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997)).

It is questionable whether Ms. Murphy's motion to reconsider the denial of her motion to reconsider is proper. Her motion suffers from two serious procedural defects. First, it was filed in response to the Court's Order denying her first motion for reconsideration (ECF No. 47), but in substance it merely restates the arguments made in her first motion for reconsideration, and is therefore really directed at the Court's Order Affirming the Recommended Decision of the Magistrate Judge (ECF No. 39). Second, Ms. Murphy has not explained why the "New information" about Mr. Burnheimer's status was unavailable to her earlier.

Unless an order was "based on a manifest error of fact or law," D. ME. LOC. R. 7(g), a litigant must reconcile herself to the Court's ruling for the time being and not continue to challenge it. After this Court has denied a motion for reconsideration, the litigant's ultimate redress is with the Court of Appeals for the First Circuit. Ms.

6

Murphy has threatened to appeal this ruling to the Court of Appeals and she is free to do so. But she may not repeatedly return to the district court in an effort to convince the trial court by repetition what she failed to convince the Court initially.

### B.     Carol Murphy's "Mere Employee" Argument

Turning to the merits of her argument, Ms. Murphy is simply wrong in her premise that a state employee must take an oath of office or have legislatively-defined duties to be entitled to qualified immunity under 42 U.S.C. § 1983.

In support of her argument, she cites a number of state cases that distinguish between public officials and state employees. First, she cites a series of state cases that arise out of state constitutions with special requirements for state officers. In *State v. Hawkins*, 79 Mont. 506, 257 P. 411 (1927), for example, the Montana Supreme Court interpreted a provision in the Montana Constitution which prohibited a state legislator from holding any "civil office" under the state. The Montana Supreme Court concluded that the position of auditor was not such a civil office. *Id.*, 79 Mont. at 529, 257 P. at 418. In *State ex rel. Kendall v. Cole*, 38 Nev. 215, 148 P. 551 (1915), the Supreme Court of Nevada drew a similar conclusion about the superintendent of the Nevada exhibits at the Panama-Pacific and the Panama-California expositions. In *State ex rel. Newman v. Skinner*, 128 Ohio St. 325, 191 N.E. 127 (1934), the Supreme Court of Ohio concluded that a librarian was not an "officer" within the meaning of a provision of the Ohio State Constitution dealing with the removal of state officers. By contrast, in 1950, the Supreme Court of Ohio concluded that members of a county board of elections were public officers

within the meaning of the same Ohio Constitutional provision. *State ex rel. Milburn v. Pethtel*, 153 Ohio St. 1, 9, 90 N.E.2d 686, 690 (1950). In *Dunbar v. Brazoria County*, 224 S.W.2d 738 (Tex. Civ. App. 1949), the Court of Civil Appeals of Texas concluded that a county road engineer was not a public officer within the meaning of a provision of the Texas Constitution.

Next, Ms. Murphy cites a Nineteenth Century Iowa case involving a state statute that criminalized embezzlement by a "public officer." *State v. Spaulding*, 102 Iowa 639, 72 N.W. 288 (1897). In *Spaulding*, the Supreme Court of Iowa concluded that the treasurer of the commissioners of pharmacy for the state of Iowa was not a public officer within the meaning of that criminal statute. 102 Iowa at 651, 72 N.W. at 291.

Finally, she cites a number of cases that address statutory distinctions between state officials and state employees for purposes of state personnel action. *See State ex rel. Dunn v. Ayers*, 112 Mont. 120, 113 P.2d 785 (1941) (concluding that an assistant superintendent at the Montana Asylum was protected by a statute that limited the State's right to remove him); *City of Groves v. Ponder*, 303 S.W.2d 485, 488 (Tex. Civ. App. 1957) (concluding that a general manager of a water district was not an officer of the district, but an employee); *Application of Barber*, 100 N.Y.S.2d 668 (N.Y. Sup. Ct. 1950) (concluding that the chief engineer of a fire department was not a local officer within the meaning of a New York statute); *Francis v. Iowa Employment Sec. Comm'n*, 250 Iowa 1300, 98 N.W.2d 733 (1959) (concluding that a

8

county school superintendent was a public officer within the meaning of an Iowa statute).

None of these state cases is pertinent to Mr. Burnheimer's status as a defendant in Ms. Murphy's federal claim. In general, state and local officials who abuse their official power act under color of state law. The governing principle is that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Monroe v. Pape*, 365 U.S. 167, 184 (1961) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 48 (1st Cir. 1999) (discussing indicia of state authority). As the First Circuit explained in *Barretto-Rivera*, it is possible for a state employee to act outside the color of state law if pursuing some private vendetta. *Id.* at 45. Here, there is no suggestion that Mr. Burnheimer's involvement with Ms. Murphy was anything but as Superintendent of the Maine Correctional Center. Ms. Murphy does not contend, for example, that Mr. Burnheimer took any action relevant to this case outside prison grounds, off duty, or because of some private vendetta. Instead, Ms. Murphy insists that Mr. Burnheimer acted as a "mere employee" as opposed to a "public officer," a distinction 42 U.S.C. § 1983 does not recognize.[1]

Ms. Murphy's confusion on this issue may in part stem from her heavy reliance on *Scheuer v. Rhodes*. In 1984, the United States Supreme Court abrogated *Scheuer* for state employees in *Davis v. Scherer*, 468 U.S. 183 (1984), a

---

[1] As the Magistrate Judge discussed, federal law recognizes different standards for supervisory liability, but that is a different issue than the one Ms. Murphy is attempting to raise here. *Recommended Decision* at 6-7.

9

case that followed *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and adopted a different standard for qualified immunity.

      **C.**      **Carol Murphy's Argument and the Recommended Decision**

More to the point, however, the Magistrate Judge's Recommended Decision was not grounded on qualified immunity. Her discussion of both the official and individual claims against Mr. Burnheimer addressed the failure of the claims to meet legal standards because they did not state constitutional violations against Mr. Burnheimer either in his official or individual capacity. Although Ms. Murphy perceives the basis for the Recommended Decision to be qualified immunity, she is incorrect. Thus, even if her state-law-based argument had merit (which it does not), it would not call into question the validity of the Recommended Decision.

In any event, she has presented no reason for the Court to revisit its earlier Order Affirming the Recommended Decision or its Order denying her first Motion for Reconsideration, and the Court denies her second Motion for Reconsideration.

**III.   CONCLUSION**

The Court DENIES Carol Murphy's Error by the Court on Reconsideration (ECF No. 49).

SO ORDERED.

                                          /s/ John A. Woodcock, Jr.
                                          JOHN A. WOODCOCK, JR.
                                          CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of October, 2012