UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CAROL MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-CV-00101-JAW |
| | ) | |
| CORIZON, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

Plaintiff Carol Murphy is incarcerated at the Maine Correctional Center in Windham, Maine. Defendant Corizon is the contract provider of health care services within the Center. Plaintiff has filed a civil action in which she alleges that Corizon and some of its employees violated her Eighth Amendment right to receive treatment for certain medical needs. The Corizon Defendants have filed their Motion to Dismiss (ECF No. 28). The Court referred the Motion for report and recommendation. For reasons that follow, I recommend that the Court grant Defendants' Motion, in part.

**THE PLEADINGS**

During her period of incarceration, Plaintiff has complained of both personal medical issues and general issues related to health services at the Center. Her Complaint (ECF No. 2) identifies seven claims, only five of which concern action or inaction on the part of Corizon employees (as opposed to prison employees). However, those five claims relate nine issues. The particulars are found not only in Plaintiff's complaint (ECF No. 2), but also in her response (ECF No. 33) and surreply (ECF No. 40) to the Motion to Dismiss and in her latest Motion for Order for Court Intervention and Sanctions (ECF No. 48).

1.     **Tuberculosis testing**

Plaintiff states that every new inmate is tested for tuberculosis, but that they are routinely introduced into the general population before the results of the tests are known.  Plaintiff says that Defendant LeBlanc has reassured her that LeBlanc knows whether or not a person has tuberculosis just by looking at her.  Plaintiff maintains that Defendant Larry Rudzinsky told her that he would read her second tuberculosis test even though she had never been given a second test.  Later, Plaintiff asked Rudzinsky who gave her the second test and he responded that he had done so.  To this, Plaintiff said, "How does it feel to know you falsified my medical records?"  Rudzinsky allegedly responded that he would make sure that she was charged every time she needed to see a nurse if she continued to talk about it.  Plaintiff complains that inadequate tuberculosis screening practices are exposing her unnecessarily to a potentially lethal disease and she maintains that her medical records are being falsified.  (Compl. at 13-14.)  In a supplemental filing, Plaintiff alleges that one inmate had a positive test for tuberculosis and was introduced to the general population.  Plaintiff alleges that she was in contact with this inmate and that she "now is waiting through the incubation period for TB to see if she contracted it."  (Ans. to Second Request for Dismissal at 8, ECF No. 40.)

2.     **Back Pain Treatment**

Plaintiff's back suddenly "went out" when she was in her cell and she experienced "excruciating pain radiating up and down [her] back."  (Id. at 4.)  Plaintiff got the attention of a neighboring inmate, who rang for the guard.  The guard related Plaintiff's predicament to medical staff and returned with the message that medical would not respond to her cell and that she had to come to them.  On Plaintiff's report that she could not walk to medical, Defendant

Ken Topel (described as the "head administrator of medical") arrived at her cell with a wheelchair, three hours later. Topel stated that medical would not treat Plaintiff if she could not make the transfer to medical. Plaintiff complied and suffered "tears and horrific pain" in the process. When they arrived at the medical office it was locked because the staff had closed it down at noon and departed, despite Plaintiff's request for assistance prior to their departure. Someone called "Dan (medical person)" came and opened the office and prescribed ice packs, Motrin, and a muscle relaxer, three times per day for 14 days. Someone wheeled Plaintiff back to her cell where she remained without any of the prescribed treatment until midnight, when she received Motrin and one ice pack. Over the next 14 days, Plaintiff received a muscle relaxer on 11 occasions and one Motrin on 14 occasions. She never saw another ice pack and never received the muscle relaxer and Motrin three times daily as prescribed. On one morning when she received no medication, Plaintiff asked the guard why. He called her request down to medical and there was no response even as late as 6:30 p.m. (Id. at 4-5.) Plaintiff states that she later spoke with Ken Topel and that he told her it was of little concern, a mistake, or an oversight that some of her meds did not get to her once in a while. (Id. at 6.)

3.   **Food Tray**

In connection with Plaintiff's excruciating back pain, she was unable to walk to the cafeteria to eat. For three days nobody delivered a food tray to her cell, though other inmates on cell restriction and in segregation received food trays, according to Plaintiff. (Id. at 5.) In connection with a later-filed grievance, medical personnel reported that they issued a medical slip for a food tray for three days, but no such notice was ever actually issued. Plaintiff says medical falsified the records to cover its trail. (Id.)

In a supplemental filing, Plaintiff describes the food tray scenario in a manner that suggests the trays may have been delivered to her cell, but not to her in her bunk. She states that on the fourth day "she managed to walk the 8 feet to a tray an inmate put on the table for her." (Pl.'s "Answer to Motion to Dismiss" at 10.) She also elaborates that LeBlanc told her that Dan made a notation on her medical file that he offered her a slip to receive a tray "in her cell." (Id.) Plaintiff says that if this notation is in her medical file, it must have been added in light of this litigation because Dan had been unable to find her file on the day that this incident started. (Id. at 10-11.)

### 4. Dental Treatment

Shortly after her arrival at the Center, Plaintiff saw Defendant Dr. Praveen Pavulura, the Center's dentist. Plaintiff had a tooth that was draining pus and blood. Dr. Pavulura offered to pull the tooth, but Plaintiff refused "for reasons of concern about autoclaving done in dental." (Compl. at 7.) Plaintiff inquired about the availability of check-ups and fillings. Dr. Pavulura told her that he only pulls teeth. Plaintiff states that she has received no preventative dental care at the Center and that she believes her teeth are decayed beyond repair as a result.

Plaintiff additionally alleges that she became aware of two other inmates who did receive fillings. However, she explains that one inmate stated she researched the law and fought for months to get her filling and that the other inmate stated she received a filling only after she experienced a sinus infection and "a huge pus filled lump between her eyes." (Id. at 7.) Essentially what Plaintiff is alleging is that Defendant Pavulura offers only extractions and grants fillings only in extreme cases or only to inmates who are knowledgeable about their rights. (Id. at 8.)

As for the tooth in need of extraction, Plaintiff states in a supplemental filing that she refused the extraction because she believed Dr. Pavulura would extract the infected tooth without first giving her a course of antibiotics. (Pl.'s "Answer to Motion to Dismiss" at 3, ECF No. 33.) Plaintiff also elaborates that the other inmate who suffered the sinus infection did so after an extraction was performed without the benefit of a prior course of antibiotics. (Id.) Plaintiff states that the lack of fillings is material to her other teeth, which she describes as painful and permanently damaged due to the lack of any preventative/restorative fillings. (Id.)

5.   **Osteoporosis Treatment**

When Plaintiff arrived at the Center, she had a ten-year history of having a prescription for Fosamax. However, also prior to arrival, Plaintiff consulted with a doctor of homeopathic medicine who prescribed strontium citrate instead of Fosamax. (Compl. at 8.) Plaintiff states that Defendant Hope LeBlanc agreed to provide her with some medication for osteoporosis if she took a bone density test. The test result, according to Plaintiff, was -2.1. Plaintiff states that she was tested again, this year, and that the result was -2.25. Defendants denied her any medication other than a calcium supplement and acknowledged that calcium would not stop her bone loss. Plaintiff says that Defendant Dr. Sunderland (now described as and identified on the docket as Dr. Stockwell) told her she would not receive Fosamax or a comparable medication until her "bones fractured" and her "scan showed outright osteoporosis." (Id. at 10.)

6.   **Food Allergies Treatment**

Plaintiff states that she has long-standing allergy problems, primarily associated with food and food additives, and that she had a preexisting prescription for allergy medication. (Id. at 8-9.) She says that her medication was stopped upon arrival at the Center, that "medical tried alternative allergy medicines," and that she refused the alternatives because she had allergy

problems with the medicines given to her. (Id. at 8.) Plaintiff requested Sudafed because she knew she would not have trouble with it, but Defendant LeBlanc refused this request. Consequently, says Plaintiff, she had various dietary restrictions and there was little at the Center that she could eat. When she requested an allergen-free diet, "medical's solution was to put me on Ensure 3 times per day." (Id. at 9.) This resulted in indigestion and weight-loss. (Id.) Plaintiff states that "medical" did seek her allergy records, but that her primary care physician (a "one-man practice") had recently died and she had no idea where her current records could be found. (Id.) When Plaintiff requested new testing, Dr. Sunderland (Stockwell) told her that she would not be tested, but that he might agree to have her eat something to observe what, if any, symptoms she experienced. Plaintiff evidently has refused and complains that she has been hungry for an 18-month period. Most recently, Plaintiff contends that her allergy medications "have been suspended for a month" based on an alleged "medication holiday." (Mot. for Order for Court Intervention and Sanctions at 1, ECF No. 48.) She says she has already experienced sinus pain, sinus headaches, and increased difficulty breathing with chest pain, and that these symptoms will return with a medication holiday. (Id.)

**7.     Asthma Treatment**

Plaintiff states that she had an albuterol inhaler before her incarceration. She alleges that she suffered asthma attacks in the Center and put in a request to see medical. It took more than two weeks before she was seen for this. When she was seen she was refused an inhaler and was told there was no medical report to establish the presence of asthma. Plaintiff's request for testing was denied. (Compl. at 11.)

**8.      Over-the-Counter Pain Medication**

Plaintiff states that she has experienced flu symptoms at the Center and also injured her hand and experienced swelling on one occasion. She says that she was denied a request for aspirin or Advil to relieve pain. She also says that her requests would go unanswered, in any event, for several days. She has been told that she must purchase her own over-the-counter medications, but complains that she is indigent and therefore cannot purchase her own medicines. Additionally, she states that the policy is to deny even these medicines unless the inmates have seen a doctor for their complaints, which would take an additional period of time, more than 14 days, according to Plaintiff. Essentially, Plaintiff's allegation is that she and other indigent inmates have no access to over-the-counter pain medication and must simply suffer through whatever non-emergency pain they experience. (Id. at 12-13.)

**9.      Corizon and Rich Hallworth**

In addition to the individual Corizon defendants named in the preceding paragraphs, Plaintiff includes as a named defendant Corizon, the corporate entity, and Rich Hallworth. The complaint does not describe who Mr. Hallworth is (evidently he is Corizon's CEO). Plaintiff's allegation against these two defendants is as follows: "I believe that Corizon and Rich Hallworth in order to get prison contracts are violating the law, cutting corners, not providing necessary care and that MDOC and Joseph Pont are allowing them to do it to save money at the expense of the inmate's health." (Id. at 11.) Plaintiff also implicates Hallworth in her claim about access to over-the-counter pain relievers. (Id. at 13.)

## SUMMARY DISMISSAL STANDARDS

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted."

7

Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction";  (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).  When deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face."  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 129 S. Ct. at 1949).  A plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement.  However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy.  Iqbal, 129 S. Ct. at 1949.  Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice.  Id. at 1949-50.  See also Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

  When the plaintiff is a pro se litigant, the Court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss.  Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

**THE EIGHTH AMENDMENT STANDARD**

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed precedent establishing that the Eighth Amendment prohibition against cruel and unusual punishment "proscribes more than physically barbarous punishments" and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Id. at 103 (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). According to the Court: "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." Id. Because inmates are dependent on prison authorities in relation to medical care, their needs cannot be met unless some duty of care is imposed on those in the position to tend to their needs. Even in "less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." Id. Toleration of "unnecessary suffering is inconsistent with contemporary standards of decency." Id. See also Helling v. McKinney, 509 U.S. 25, 32 (1993) ("'[D]eliberate indifference to serious medical needs of prisoners' violates the Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency.") (quoting Estelle, 429 U.S. at 104).

As articulated by the Supreme Court in Estelle, "deliberate indifference to serious medical needs of prisoners" amounts to an Eighth Amendment violation that is actionable under 42 U.S.C. § 1983. Id. at 104. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-105. The Estelle Court made clear, however, that "inadvertent failure to provide adequate medical care" does not rise to the level of a constitutional violation and that the

deliberate indifference standard does not equate to a medical malpractice or negligence standard. Id. at 106. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. The claimant in Estelle, for example, complained of inadequate attention to his back condition. The prison health providers had treated the condition with bed rest, muscle relaxants, and pain relievers, but they had declined to conduct or order an x-ray. Id. at 107. The court of appeals held that this shortcoming in treatment stated a claim, but the Supreme Court reversed, observing that the decision to forego an x-ray, or like measures, was not cruel and unusual punishment and was at most medical malpractice, something appropriately addressed in the forum state's courts, not in federal court. Id. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992).

In Farmer v. Brennan, the Court returned to the deliberate indifference standard, but in the context of a claim for alleged failure to protect the plaintiff prisoner from assaults by other inmates. 511 U.S. 825, 830-31 (1994). For purposes of cases involving prison medical care, the relevance of the Farmer opinion is that the Court refined the meaning of "deliberate indifference." Id. at 828. Simply stated, the Court held that deliberate indifference requires "a showing that the official was subjectively aware of the risk."[1] Id. at 829. This standard of culpability is higher than mere negligence, but may be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at

---

[1] The Court also observed that the hazard in question must be "objectively 'sufficiently serious,'" but this was not new law. Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

835. Observing that the Eighth Amendment prohibition is worded to prevent cruel and unusual punishments rather than conditions, the Court concluded:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. The result of this standard is that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838.

The First Circuit Court of Appeals has summarized the standard as follows: "To succeed on an Eighth Amendment claim based on inadequate or delayed medical care, a plaintiff must satisfy both a subjective and objective inquiry: he must show first, 'that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety," and second, that the deprivation alleged was "objectively, sufficiently serious." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Burrell v. Hampshire Cnty., 307 F.3d 1, 3 (1st Cir. 2002)). In reference to deliberate indifference, the Court of Appeals has held that it may be shown by "the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)). In reference to the seriousness of the harm or the medical need, it has held that "[a] medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990). The Court of Appeals has also introduced a "shocks the conscious"

11

standard into this inquiry. Feeney v. Corr. Med. Servs., 464 F.3d 158, 162 (1st Cir. 2006); Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991); Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987). Though this introduces yet another term for district courts to contemplate, it is not inconsistent with the Supreme Court's admonition that "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. at 9 (vacating dismissal of prison claim, but involving a claim related to application of force rather than denial of medical services).

It should be noted that all of the cases cited above other than Hudson were resolved at the summary judgment stage of litigation. When it comes to measuring a plaintiff's pleadings against the subjective component of the deliberate indifference standard, the Supreme Court has cautioned that conclusory allegations do not suffice to state a claim. However, the Federal Rules of Civil Procedure have long provided that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" and are not subject to a heightened pleading standard. Fed. R. Civ. P. 9(b), (c). The First Circuit has not held otherwise, though it has bypassed the question on at least one prior occasion where the plaintiff's allegations would satisfy even a heightened pleading rule. Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64-65 (1st Cir. 2002) ("Under Fed. R. Civ. P. 9(b), knowledge 'may be averred generally.' The knowledge required is not knowledge that a specific harm would befall the inmate, but rather, knowledge of facts from which the official can draw the inference that a substantial risk of serious harm exists.") (citation omitted) (vacating the dismissal of a prisoner's claim).

## DISCUSSION

All of Plaintiff's claims pertain to medical care in the prison environment. The Corizon Defendants contend that none of Plaintiff's concerns is sufficient to state a plausible claim

because none of Defendant's ailments was sufficiently serious to demand medical attention. (Mot. to Dismiss at 8-15, ECF No. 28.) From there, they contend that dismissal is also warranted for any supervisory or custom and policy claims against either Rich Hallworth or Corizon. (Id. at 15-17.) The following discussion addresses each of Plaintiff's claims by tracking the sections set forth in the preceding recitation of Plaintiff's allegations.

1. **Tuberculosis testing**

Certainly, the threat of a tuberculosis outbreak in a prison is a significant concern that could give rise to litigation related prisoner health and safety. However, Plaintiff has not alleged that she contracted tuberculosis or that she has a serious medical need that is unmet in this regard. Plaintiff alleges that her TB test records were falsified to indicate that she had a second test when in fact she had only one test and that she has knowledge of another inmate having tuberculosis and having some exposure to the general population.

Plaintiff may not use Section 1983 to put herself in the role of private attorney general. Section 1983 is a vehicle for plaintiffs to vindicate personal rights secured by federal law and the federal constitution, not a general grant of authority to intervene in the government's performance of its police power, health and safety responsibilities. In the absence of additional allegations of infection or a serious threat to Murphy's health there is no basis for this court to micro-manage Corizon's tuberculosis screening program. See Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997) (affirming entry of summary judgment against claim of prisoner who actually contracted tuberculosis in prison); Selvey v. City of St. Louis, Nos. 95-3041, 90-3045, 1996 U.S. App. Lexis 9252 (8th Cir. Apr. 24, 1996) (same, based on failure to contradict evidence that prison had a screening system in place and stating that failure to detect and prevent was at most negligence); Powell v. Reeves, No. 5:06CV130-MU-02, 2006 U.S. Dist. LEXIS

78079, 2006 WL 2927199 (W.D.N.C. Oct. 10, 2006) (dismissing claim where prisoner contracted tuberculosis but received treatment for it).

### 2. Back Pain Treatment

Plaintiff alleges an episode of severe back pain. According to her allegations, Defendant Topel came to her cell with a wheel chair three hours after a report was made about Plaintiff's condition. In and of itself, this three-hour delay does not rise to the level of an Eighth Amendment violation. This claim does not involve a life-threatening condition, after all, and any member of the public might wait a comparable time for attention or forego medical attention altogether. However, from there, it is fair to infer that Defendant Topel became aware that Plaintiff needed medication to address severe pain symptoms and that he did nothing to ensure that the prescription was honored. Refusing to provide pain relief for a severe condition could be regarded as the needless infliction of suffering for a punitive purpose. It is a plausible inference that Topel was deliberately indifferent to a serious diagnosed need for medication to address a condition imposing severe pain. Topel's alleged statement that it was of little concern that medications were not delivered is also a general allegation of state of mind and more than a purely conclusory allegation.

### 3. Food Tray

I infer from the complaint that the food tray issue is not merely a complaint that a food tray was not delivered to Plaintiff in her bunk, but rather that there was a failure to send any food tray to her cell for three days. The problem with this claim is that it is not clear who the proper defendant is. At the present juncture, the claim appears to be logically connected with Plaintiff's back pain claim, above, and the allegations plausibly suggest that one or more person was deliberately indifferent to Plaintiff's need for food during her period of bed rest. However, the

current state of the pleadings provides no causal connection between any named defendant and the conduct described. "Dan," last name unknown, who allegedly had some responsibility to make file notations and issue a slip related to delivery of a food tray, is not a defendant.

**4. Dental Treatment**

Plaintiff has alleged a serious medical need related to a painful, infected tooth. Her allegations invite the inference that Dr. Pavulura would not prescribe a course of antibiotics prior to performing an extraction and that she refused the treatment for this reason and has suffered unnecessary pain as a result. This is sufficient to overcome a motion to dismiss. Similarly, Plaintiff alleges that fillings have been ruled out for her even though she has serious dental needs and is experiencing pain in other teeth as a result of a prolonged period without any restorative care. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (vacating dismissal of prison claim related to extended delay in the provision of dental care). See also Harrison v. Barkley, 219 F.3d 132, 136-37 (2d Cir. 2000) ("[B]ecause a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a "serious medical need" within the meaning of our case law.") (vacating summary judgment against prisoner's dental treatment claim); McCarthy v. Place, 313 Fed. Appx. 810, 816 (6th Cir. 2008) (unpublished) (vacating summary judgment in prisoner claim where a genuine issue existed whether dentist knew of and failed to alleviate prisoner's dental pain for more than seven months and intentionally chose a less efficacious treatment plan). Accepting as true the allegation of serious dental needs, Plaintiff adequately alleges a claim for the unnecessary infliction of pain and suffering through the prolonged denial of dental care.

   5.   **Osteoporosis Treatment**

   Plaintiff wants a homeopathic remedy prescribed to address osteoporosis, a gradual deterioration of the bones. Potentially, Plaintiff might also accept a prescription of Fosamax. Defendants Stockwell and LeBlanc arranged for a bone scan but denied the requested medication because Plaintiff does not yet have outright osteoporosis. There is no basis to infer that their decision was other than a medical judgment with which Murphy disagrees. Plaintiff fails to state a claim for deliberate indifference to a serious medical need. At most she alleges a claim of substandard care when measured against what a doctor might prescribe outside of the prison context.

   6.   **Food Allergies Treatment**

   Plaintiff alleges that she is allergic to the standard prison diet and that she has experienced hunger and other problems, including weight loss, as a consequence of resorting to a liquid diet of Ensure, without any other alternative being available. Plaintiff alleges that she would consume food that she is allergic to, but that she would require an allergy medication (Sudafed) to address allergy symptoms, something that Defendants have refused to prescribe. Plaintiff says that she is unable to obtain her medical records related to this condition to substantiate her position and that Defendants have refused to conduct an allergy test.

   Plaintiff's most recent supplementation simply reduces the relative clarity of Plaintiff's allegations. It appears she has, in fact, been receiving allergy medication and that her claim in this regard is on par with a dispute over the preferred method of treatment rather than with deliberate indifference to a serious medical need. Plaintiff fails to state a claim because she has not described a serious medical need. Not all food allergies are severe. Many people live with chronic allergy symptoms. Nothing suggests that Plaintiff would suffer serious or extreme

symptoms from eating the standard prison diet and taking whatever allergy medication has been prescribed to her. Furthermore, Dr. Stockwell's request to observe Plaintiff's reaction to the standard prison food, for purposes of diagnosis and possible treatment, did not amount to an unreasonable failure to treat and therefore does not rise to the level of deliberate indifference to a serious medical need nor does the trial period of a "medicine holiday" suggest deliberate indifference to a serious medical need. In fact, it suggests the medical defendants have engaged with Murphy on the issue of food allergies and are attempting to find a reasonable accommodation through a trial and error process.

**7.     Asthma Treatment**

Asthma, like food allergies, can be mild or severe. As with Plaintiff's allegations pertaining to food allergies, Plaintiff fails to give any indication that her asthma presents a serious or extreme health risk. She therefore fails to state a claim.

**8.     Over-the-Counter Pain Medication**

Plaintiff's allegations related to the denial of over-the-counter pain medications does not reflect any underlying serious medical condition and, consequently, fails to describe a plausible constitutional claim. Montes v. Ponce Municipality, 79 Fed. Appx. 448, 450-51 (1st Cir. 2003) (holding that conditions requiring only over-the-counter pain medication were not serious medical conditions). This is not to say that prisoners are never entitled to over-the-counter pain relief medication, only that Plaintiff's allegations about flu symptoms and a hand injury do not describe serious medical needs. Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980) (holding that the common cold is not a serious medical condition); Schwartz v. Jones, No. 99-3269 Sec. "J" (1), 2000 U.S. Dist. LEXIS 18801, *11-12, 2000 WL 1859012, *3 (E.D. La. Dec. 18, 2000) (ruling that denial of aspirin and cold medicine for head cold and flu-like symptoms did not

concern serious medical needs); Franklin v. Sheahan, No. 97 C 6534, 1998 U.S. Dist. LEXIS 8675, *12, 1998 WL 312120, *4 (N.D. Ill. June 5, 1998) ("As medical conditions go, the common cold is insufficiently serious to implicate constitutional concerns about deprivation of essential medical care.").

### 9.     Corizon and Rich Hallworth

The Corizon Defendants argue that the claim against the corporate defendant and against Mr. Hallworth must be dismissed because the doctrine of respondeat superior does not apply and because there is no plausible allegation of an underlying constitutional deprivation. (Mot. to Dismiss at 15-16, ECF No. 28.)

As Defendants argue, it is "axiomatic that the doctrine of respondeat superior does not apply to claims under section 1983." Gaudreault v. Salem, 923 F.2d 203, 209 (1st Cir. 1990). The corporate defendant can only be liable for its own constitutional violations.[2] Thus, Corizon could be liable on a showing that the underlying deprivations arose because of a corporate custom or policy. Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004); see also Leavitt v. Corr. Med. Servs., 645 F.3d 484, 504 (1st Cir. 2011) (applying municipal liability standard to claims against private medical services provider, but noting that defendant conceded the issue). Here, Plaintiff has alleged plausible underlying claims and the only question is whether it is plausible to infer that there is a corporate custom or policy that caused or encouraged the conduct in question. The conduct that I have found actionable—the treatment related to back pain and dental needs—could well proceed from a corporate policy of withholding necessary treatment and medications or foregoing required procedures for purposes

---

[2]     Corizon is a private corporation. Nevertheless, in its role as the contract provider of medical services at the state-run Correctional Center, Corizon and its employees act "under color of state law" for purposes of Section 1983 liability. West v. Atkins, 487 U.S. 42, 54-57 (1988).

of cost containment.  Accordingly, I recommend that Corizon remain a defendant on these claims.

As for Hallworth, the allegations do not plausibly suggest that he directed any aspect of Plaintiff's care.  Hallworth could be liable on a showing of direct supervisory involvement if there is a plausible inference that there was an "affirmative link" between his personal conduct and the constitutional deprivation experienced by the plaintiff.  Maldonado v. Fontanes, 568 F.3d 263, 274-75 (1st Cir. 2009) (describing active encouragement, condonation, or acquiescence in relation to a known deprivation as examples).  Here, the threadbare allegations against Hallworth are insufficient to state a plausible claim.  Beyond the custom or policy claim that remains viable against Corizon, there simply is no plausible reason to infer from Plaintiff's allegations that Hallworth was even aware of the treatment Plaintiff allegedly received at the Maine Correctional Center.

As for Corizon, Ken Topel, and Dr. Praveen Pavulura, I recommend that the Court keep them in the case and finally determine whether they are subject to trial-worthy claims in the context of a summary judgment record.  Should the Court accept this recommendation, a scheduling order will issue after the remaining Defendants have filed their answer.

## CONCLUSION

I recommend that the Court GRANT IN PART the Corizon Defendants' Motion to Dismiss and DISMISS WITH PREJUDICE Plaintiff's claims related to tuberculosis testing, osteoporosis treatment, the food tray medical slip, food allergy treatment, asthma treatment, and access to over-the-counter medications.  I further recommend that the Court dismiss the claims against Defendant Rich Hallworth, Dr. Stockwell (food allergies/asthma/osteoporosis), Hope LeBlanc (tuberculosis/food allergies/osteoporosis), and Larry Rudzinsky (tuberculosis).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

October 24, 2012 /s/ Margaret J. Kravchuk
U.S. Magistrate Judge