UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| CAROL MURPHY, | ) |
| Plaintiff | ) ) ) |
| v. | ) 1:12-cv-00101-JAW ) |
| CORIZON, *et als.*, | ) ) |
| Defendants. | ) ) |

**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff Carol Murphy alleges that Defendant Corizon and certain of its employees violated her Eighth Amendment right to receive medical treatment in prison. The matter is before the Court on the Corizon Defendants' Motion for Summary Judgment. (Motion for Summary Judgment, ECF No. 110.) Plaintiff has not opposed the Motion for Summary Judgment in accordance with Local Rule 56 but has, instead, filed a "Notification of Removal" based on alleged due process violations. (Notification, ECF No. 118.) For reasons that follow, it is recommended[1] that the Court grant Defendants' Motion for Summary Judgment.

### BACKGROUND

Plaintiff commenced this action on March 23, 2012, and complained of medical treatment that Defendants rendered or denied during Plaintiff's incarceration at the Windham Correctional Facility. In her complaint, Plaintiff also joined the Maine Department of Corrections and certain Department officials as Defendants.

---

[1] The Court referred the motion for report and recommended decision.

On May 9, 2012, the Maine Department of Corrections and its officers filed a motion to dismiss. Magistrate Judge Kravchuk issued a Report and Recommendation on the motion, in which report she recommended that the Court grant the motion and dismiss with prejudice Plaintiff's claims against said Defendants. On August 22, 2012, Judge Woodcock issued an Order Adopting the Report and Recommendation.[2]

The Corizon Defendants also filed a motion to dismiss. Magistrate Judge Kravchuk recommended that the Court grant the motion, in part, and dismiss Plaintiff's claims regarding tuberculosis testing, osteoporosis treatment, food allergy treatment, asthma treatment, flu medication, and other concerns, but allow Plaintiff to proceed on her claims related to the treatment, or alleged non-treatment, of severe back pain and a painful, infected tooth. The Court adopted the recommendation on December 21, 2012.[3]

In its scheduling order, the Court established May 29, 2013, as the discovery deadline. In June 2013, Plaintiff completed her state-imposed prison sentence. On August 20, 2013, the Corizon Defendants moved for leave to file a late dispositive motion. As grounds for the motion, Defendants cited Plaintiff's failure to cooperate in discovery, particularly with respect to Plaintiff's failure to provide medical and dental releases, which failure eventually prompted Defendants to file a motion to compel disclosure of administrative and medical records by the Department of Corrections. Magistrate Judge Margaret Kravchuk granted Defendants' request, and set October 18, 2013, as the deadline for the filing of dispositive motions. Meanwhile, on August 30, Plaintiff

---

[2] On April 30, 2012, Plaintiff filed a motion requesting that Judge Woodcock and Magistrate Judge Kravchuk recuse and that her action be transferred to Tennessee District Court (where she initially filed suit), in the event no impartial judge was available in this District. Judge Woodcock and Magistrate Judge Kravchuk denied the requests as well as Plaintiff's motions for clarification and reconsideration.
[3] On December 21, the Court also adopted a November 16, 2012, recommendation that the Court deny Plaintiff's request for sanctions and court intervention related to the denial of allergy medication.

filed her second[4] motion for the recusal of Judge Woodcock and Magistrate Judge Kravchuk, which motion was denied. Plaintiff then filed an interlocutory appeal on September 16, 2013.

The Corizon Defendants filed a Motion for Summary Judgment on October 10, 2013. On November 14, 2013, Magistrate Judge Kravchuk stayed further action on the motion pending resolution of Plaintiff's appeal. Plaintiff sought an extension on her response, which request was mooted in light of the stay. Magistrate Judge Kravchuk ordered that Plaintiff file her response within seven days following the Court's receipt of the Court of Appeals mandate.

The Court of Appeals dismissed the appeal for lack of jurisdiction as the orders denying recusal were not subject to immediate appeal and no basis existed for mandamus relief. (ECF No. 117.) The Court of Appeals returned its mandate on February 26, 2014. (ECF No. 119.) Plaintiff's deadline to respond to the summary judgment motion, therefore, was March 5, 2014. Plaintiff thus had approximately 21 weeks from the filing of the motion to respond to the motion for summary judgment. Although Plaintiff filed her "Notification of Removal" on February 24, 2014, she did not file a response to the Corizon Defendants' Motion for Summary Judgment.

## FACTS

As part of their summary judgment submission, Defendants filed a statement of material facts. Plaintiff has not opposed any of the factual assertions contained in Defendants' statement. Pursuant to Local Rule 56(f), facts contained in a statement of material facts "shall be deemed admitted unless properly controverted," if the facts in question are "supported by record citations." Based on Defendants' Statement of Material Facts and the record materials cited in support thereof, which materials consist primarily of the affidavits of Dr. Praveen Pavuluru and Health Services

---

[4] See, supra, footnote 2.

Administrator Kenneth Topel and the exhibits attached thereto, the following facts are established for purposes of summary judgment.

Corizon, Inc. (f/k/a Correctional Medical Services, Inc.)[5] is an independent contractor that provided health care services to the Maine Correctional Center ("MCC") pursuant to a contract with the Maine Department of Corrections ("MDOC"). From December 2008 through June 2011, Defendant Kenneth Topel was the Health Services Administrator ("HSA") for Corizon at MCC. As the HSA, Mr. Topel was not generally involved with direct patient care. Instead, he served as the administrative manager of the health services provided by Corizon at MCC. In this capacity, Mr. Topel was responsible for overseeing the delivery of contractual health care services, supervising health care staff, and conducting a periodic review and analysis of patient records regarding the medical examinations and treatments afforded to inmates. (*Id.* ¶¶ 4-6.)

Praveen Pavuluru, DMD, worked as a dentist for Corizon, Inc. at MCC beginning in April 2005, and through the time period relevant to the allegations in Plaintiff's Complaint. As a dentist for Corizon, Dr. Pavuluru was responsible for providing dental services and directing patient dental care to inmates incarcerated at MCC. During the time period relevant to the allegations in Plaintiff's Complaint, each week, Dr. Pavuluru worked at MCC twenty hours over two days. When he was at MCC, Dr. Pavuluru's duties included triaging and prioritizing, in collaboration with the medical providers and nursing staff, the dental sick-call slips and urgent/emergent needs to alleviate pain and to prevent infection; making himself available to nursing staff for telephone orders for antibiotics and other medications if the onsite physician or medical provider was not available or reachable; performing clinical and radiographic dental exams to identify sites of potential infection and other urgent and routine dental treatment needs; providing routine

---

[5] In 2011, Correctional Medical Services, Inc. became Corizon, Inc. (Defendants' Statement of Material Facts ¶¶ 1-3.)

4

restorative treatment, such as fillings, after all urgent/emergent dental needs were met; and performing extractions of non-restorable/salvageable teeth to prevent flare-up of infections. (*Id.* ¶¶ 7-10.)

*Applicable grievance policy*

Policy number 29.2 of MDOC's policies, entitled Grievance Process, Medical and Mental Health Care, sets forth a grievance policy whereby a prisoner can request administrative review of any decisions concerning the health care provided to inmates while incarcerated at MCC. Under Policy 29.2, an inmate can request an administrative review of any policy, procedure, practice, action, decision, or event (a) that directly affects the medical or mental health care received by the prisoner or resident, (b) that the inmate believes is not responsive to his/her medical or mental health needs, (c) that is in violation of the inmate's rights or is in violation of departmental policies and procedures, and (d) for which the inmate believes a departmental health care employee or contractor is responsible.

The intent of the Grievance Process, Medical and Mental Health Care policy is to resolve an inmate's complaint prior to filing a lawsuit. The policy provides that as a precondition to invoking the grievance process, an inmate must request medical treatment through the established health care procedures, such as by submitting a "sick call slip." Before filing a grievance, "the prisoner or resident shall make an attempt to resolve the complaint in an informal manner by contacting the facility medical or mental health staff person most directly involved or that person's supervisor." "If the grievance concerns a specific action, decision, or event, the grievance must be filed within fifteen (15) days of when the action, decision or event occurred. If the grievance concerns a policy, practice or procedure, the grievance must be filed while the policy, procedure, or practice is in effect." If a complaint cannot be resolved in an informal manner within fifteen

(15) days, the "prisoner or resident must file a formal grievance within the fifteen (15) day time limit in order to utilize the grievance process." (*Id.* ¶¶ 11-17.)

When a grievance is filed, a grievance officer conducts what is referred to as a "First Level Review" of the inmate's healthcare grievance and provides the inmate with a written decision regarding the grievance. "If, after receipt of the response, the prisoner or resident believes that the response does not adequately address the problem, he/she may indicate on the grievance appeal his/her reasons why the response is inadequate and may then file an appeal." This is the "Second Level Review." A Second Level Review is decided by the Chief Administrative Officer of the correctional facility, who must respond to the prisoner in writing. An inmate can appeal from a decision of the Chief Administrative Officer to the Commissioner of the MDOC. The appeal results in a "Third Level Review." The Commissioner of the MDOC must respond to the prisoner's "Third Level Review" appeal in writing. The "Third Level Review" is the final administrative appeal level. (*Id.* ¶¶ 18-22.)

*Dental issue*

Before her incarceration at MCC, Plaintiff was an inmate at the Somerset County Jail. While at the Somerset County Jail, Plaintiff filed an "Inmate Medical Request" on January 30, 2010, stating "need teeth pulled because jail will not fill them." Plaintiff's teeth were examined at the Somerset County Jail on February 1, 2010. In response to Plaintiff's request to have her teeth pulled, the provider at Somerset County Jail noted that "teeth are not pulled unless it's a last resort. At this time you are on antibiotics, so unless after the antibiotics it becomes infected again, there will not be a dental referral." (*Id.* ¶¶ 23-26.)

Plaintiff began her period of incarceration at MCC on March 5, 2010. At that time MDOC Policy 18.5 provided that a "dental screening shall be performed within seven (7) days of intake

6

into the reception facility by a dentist or dental hygienist, to include visual observation of teeth and gums and notation of any obvious or gross abnormalities requiring immediate referral and treatment." In the absence of any of the specified conditions, a dental examination by a licensed dentist was to occur within one (1) month of intake. However, "[i]n the case of a prisoner readmitted to the Department who has received a dental examination in the past six (6) months at a Department facility or who has been transferred from another Department facility, a new exam is not required, except as determined by the supervising dentist." (*Id.* ¶¶ 27-30.)

As part of the MCC's intake procedures, on March 5, 2010, Plaintiff signed a "Consent to Medical/Dental Treatment" form, but she amended the form to read "no procedure may be done without my prior consent." (*Id.* ¶ 31.) On March 6, 2010, Plaintiff filed a sick-call slip seeking dental treatment. (*Id.* ¶¶ 32-33.) On March 25, 2010, Plaintiff received a physical assessment, which included an examination of her teeth and gums, which were determined to be in "fair condition." A dental examination for Plaintiff was scheduled to occur on March 27, 2010, with Defendant Dr. Pavuluru. The scheduled examination was approximately three weeks after Plaintiff filed her dental sick-call slip and within one month of her incarceration at MCC. On the day of her dental examination, Plaintiff refused a detailed dental sick-call exam, refused radiographs, refused all treatment because she wanted to wait, and refused to allow Defendant Dr. Pavuluru to look into her mouth. On March 27, 2010, Plaintiff signed a "Refusal of Treatment" form confirming, in writing, that she refused the dental sick call exam, radiographs and treatment. Before Plaintiff signed the form, Dr. Pavuluru informed Plaintiff of the potential risks of refusing dental treatment. (*Id.* ¶¶ 34-40.)

On April 25, 2013, more than three years after her March 27, 2010, refusal of treatment, Plaintiff filed a sick-call slip requesting antibiotics for a suspected dental infection. A registered

nurse examined Plaintiff on April 27, 2013, and noted that there was "no redness, no swelling noticed in the left top and bottom back teeth." The nurse referred Plaintiff to the dental list for a dental sick call exam with Defendant Dr. Pavuluru the same day, but Plaintiff again refused to appear for treatment. Plaintiff signed another "Refusal of Treatment" form on April 27, 2013, after being informed of the potential risks of refusing treatment. As her reason for declining dental treatment, Plaintiff wrote that she was "suing this dentist for incompetency + breach of contract causing irreparable harm." (*Id.* ¶¶ 41-44.)

Plaintiff did not file additional sick-call slips for any dental pain or other dental issues between March 6, 2010, and April 25, 2013. Plaintiff also did not file, at any point during her incarceration, a grievance under the MDOC inmate healthcare grievance policy regarding any alleged deficiencies in her dental treatment, nor did she file a written grievance under the MDOC's grievance policy regarding the absence of dental screening or examination. (*Id.* ¶¶ 45-47.)

*Back issue*

On August 27, 2010, Plaintiff experienced an incident of back pain. Defendant Topel was informed that Plaintiff was laying in her cell complaining of back pain and refused to get up. Prior to that time, Topel was unaware that Plaintiff was suffering from or had any complaints of acute back pain. Shortly after learning of Plaintiff's condition, Topel went directly to Plaintiff's cell to assess her condition. Because it was reported that Plaintiff was unable or unwilling to walk, Topel brought a wheelchair with him. Plaintiff was transferred into the wheelchair and taken directly to MCC's medical office for treatment. Topel did not participate in the diagnosis or treatment of Plaintiff's back pain, nor did he speak with her about her back pain after she entered MCC's medical office. The "Progress Notes" reflect that Plaintiff was examined by a medical provider for "lumbar strain," and prescribed ibuprofen, flexeril, and hot/cold packs. (*Id.* ¶¶ 48-55.)

According to several communications from the Corizon Defendants to correctional officials at MCC dated August 27, 2010, Plaintiff's medications and meals were to be delivered to her cell for a period of three days. Plaintiff's Medication Administration Records ("MARS") also show that Plaintiff was to receive flexeril and ibuprofen at the medication window until September 12, 2010. Plaintiff's MARS reflect that she did not appear at the medical office to get her flexeril and ibuprofen medications from September 6, 2010, through September 9, 2010, and that she did not go to the medical office to get her flexeril medication on September 10, 2010.[6]

During her period of incarceration at MCC, Plaintiff frequently rejected medical attention and refused to appear to have her medications dispensed to her. There is no record of Plaintiff filing a written grievance under the MDOC grievance policies regarding her back pain or any medical treatment relating to back pain or back injury. (*Id.* ¶¶ 60-61.)

## DISCUSSION

**A.  Jurisdiction**

With her "Notification of Removal" (ECF No. 118), Plaintiff purports to take an action that divests this Court of jurisdiction over her federal claim. There is no basis in the law for Plaintiff to remove her federal claims from this Court. This Court clearly has subject matter jurisdiction over Plaintiff's claims under the Civil Rights Act. *See* 28 U.S.C. § 1331; 42 U.S.C. § 1983.

**B.  Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary

---

[6]  The notation "NS" on the MARS form describes a "no show," meaning Plaintiff did not present herself to the medical office to obtain her prescribed medication on those days. (*Id.* ¶¶ 56-59.)

9

judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, there exists a trial-worthy controversy and summary judgment must be denied as to the supported claims. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

The Corizon Defendants argue that they are entitled to judgment as a matter of law because the uncontroverted facts establish that Plaintiff failed to exhaust her administrative remedies, that the facts cannot support a finding of deliberate indifference to a serious medical need, and that the facts do not support a supervisory liability claim. (Motion for Summary Judgment, ECF No. 110.)

The Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies before bringing a lawsuit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that this provision requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. [7]

Based on the undisputed facts, Plaintiff did not exhaust her administrative remedies and has failed to provide any evidence to excuse that failure. Plaintiff asserted previously that she did not file an administrative claim because she was told by Dr. Pavuluru and the prison superintendent (Scott Burnheimer) that no dental fillings would be provided under any circumstance. (Motion for Summary Judgment at 11 n.5, citing ECF No. 40 at 3.) Through this argument, Plaintiff would appear to contend that an administrative grievance would have been futile. However, "there is no 'futility exception' to the PLRA exhaustion requirement." *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) (quoting *Massey v. Wheeler,* 221 F.3d 1030, 1034 (7th Cir. 2000)). The record, therefore, is devoid of any facts that would justify Plaintiff's failure to exhaust her administrative remedies.

Because it is undisputed on the summary judgment record that Plaintiff failed to exhaust available administrative grievance procedures, the Corizon Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims.[8]

---

[7] The Supreme Court has cited several reasons for the requirement of exhaustion of administrative remedies, including "'[affording] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford*, 548 U.S. at 93 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). "Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* at 94. It also "improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court." *Id.*

[8] Because Plaintiff failed to exhaust the available administrative remedies, this recommendation does not analyze in depth Defendants' other two bases for summary judgment. Defendants' other arguments (*i.e.*, the record could not support a finding of deliberate indifference to a serious medical need, or supervisory liability) provide independent bases for the entry of summary judgment in favor of Defendants.

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court grant the Corizon Defendants' Motion for Summary Judgment (ECF No. 110).[9]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

May 12, 2014

---

[9] As explained above, Plaintiff filed a "Notification of Removal." (ECF No. 118.) Because the Court plainly has jurisdiction over the parties and Plaintiff's claims, to the extent that Court action on Plaintiff's "Notification" is necessary, the recommendation is that the Court strike the "Notification."